**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| **CESAR HERNANDEZ**<br><br>**Plaintiff,**<br><br>**Individually and as Class Representative**<br><br>**v.**<br><br>**WAKEFIELD & ASSOCIATES, LLC**<br><br>**a foreign limited liability company,**<br><br>**and**<br><br>**INPHYNET CONTRACTING SERVICES, LLC**<br><br>**a domestic limited liability company,**<br><br>**Defendants.** | **CASE NO.: 8:24cv897**<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br>**<u>CLASS ACTION</u>** |

## <u>AMENDED[1] CLASS-ACTION COMPLAINT</u>

**COMES NOW**, Cesar Hernandez, individually as the Plaintiff—as well as on behalf of all others similarly situated as Class Representative—by and through his attorneys, as and for this Amended Class-Action Complaint against Defendants, Wakefield & Associates, LLC ("Wakefield") and Inphynet Contracting Services, LLC

[1] Plaintiff files this Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B). *See* Doc. 23.

("Inphynet") (collectively, "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises out of routine and systematic violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and the Florida Consumer Collections Practices Act, Fl. Stat. § 559.55 et seq. ("FCCPA) by the Defendants, in their illegal efforts, attempt, actions, and/or inactions to collect Consumer Debt—as defined by the FDCPA and FCCPA—from Plaintiff and numerous other consumers.

## JURISDICTION AND VENUE

2. Defendants conduct substantial and regular business activities—with the principal purpose of which is providing services and collect Debt from Consumers regarding the same and/or collecting Consumer Debts from Consumers after default on behalf of others—in the Middle District of Florida, and therefore jurisdiction is established.

3. Jurisdiction of this Court arises under 28 U.S.C. § 1331, and 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

4. Venue is proper in the U.S. District Court for the Middle District of Florida pursuant to 28 U.S.C §1391b because a substantial part of the events or omissions giving rise to the herein claims occurred within this District, Plaintiff resides here, Defendants transact business here, and numerous potential Class Members (as defined below) reside in this District, as well as throughout the State of Florida.

5. This Court has supplemental jurisdiction to hear all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

## PARTIES

6. Plaintiff, CESAR HERNANDEZ ("Plaintiff"), is a natural person who resides in Hillsborough County, Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and Fla. Stat. § 559.55(8).

7. Wakefield is a for-profit Colorado limited liability company, with its principal place of business at 830 East Platte Avenue, Fort Morgan, CO 80701, and may be served through its agent for service of process at LegalInc Corporate Services Inc., 476 Riverside Avenue, Jacksonville, FL 32202.

8. The principal purpose of Wakefield's business is the collection of debts, and most of its revenue is generated from debt collection and related activities.

9. Wakefield regularly engages in the business of using the legal system, consumer credit reporting agencies, instrumentalities of interstate commerce, including mails and telephone to collect said consumer debts.

10. Wakefield regularly collects, or attempts to collect directly or indirectly, debts owed or due or asserted to be owed or due to another.

11. Wakefield is engaged in the business of collecting debts after default.

12. Wakefield is a "debt collector" as that term is defined by 15 U.S.C. § 1692a (6) and Fla. Stat § 559.55(7).

13. Wakefield acts through its agents, employees, officers, members, directors, heirs, contractors, vendors, successors, assigns, principals, trustees, sureties,

subrogees, representatives, insurers, and/or contractors.

14. Inphynet is a domestic limited liability company with its principal address of 1643 NW 136th Ave., Building H, Suite 100, Sunrise, FL 33323 and may be served through its agent for service of process at Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

15. Inphynet is a "creditor" as that term is defined by 15 U.S.C. § 1692a (6) and Fla. Stat. § 559.55(5).

16. Inphynet acts through its agents, employees, officers, members, directors, heirs, contractors, vendors, successors, assigns, principals, trustees, sureties, subrogees, representatives, insurers, and/or contractors.

17. All necessary conditions precedent to this action have been satisfied, or Defendants waived the same.

**BACKGROUND ON FDCPA**

18. The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* **15 U.S.C. § 1692 et seq**.

19. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general standards of debt collector conduct, provides for specific consumer rights, and defines abuse. 15 U.S.C. § 1692(k).

20. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both

generally and in a specific list of disapproved practices.

21. In particular, the FDCPA enumerates practices that are forbidden for debt collectors to take.

22. The gist of the FDCPA lies in three main prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692(d). Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). Third, and finally, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692(f).

23. Simply put, the FDCPA was designed to protect consumers from debt collectors using unscrupulous tactics.

24. Regardless of whether a valid debt exists, the FDCPA prohibits unfair, unconscionable, and coercive collection methods, actions or conduct that harass, oppress, or abuse any debtor, and shields consumers from false, deceptive, or misleading statements in connection with the collection of a debt.

## **BACKGROUND ON FCCPA**

25. The FCCPA is a state consumer protection statute, modeled after the federal FDCPA. 15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

26. Like the FDCPA, the FCCPA prohibits unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*."

Fla. Stat. § 559.55(2).

27. The FCCPA prohibits a person from asserting a legal right that does not exist, using a communication that simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by government or attorney at law when it is not. See Fla. Stat. §§ 559.72(9) and (10).

## FACTUAL ALLEGATIONS

28. Inphynet has alleged that Plaintiff incurred an obligation to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and Fla. Stat. § 559.55(6) -- namely, alleged debt(s) for medical services rendered at Tampa General Hospital (hereinafter "Debt").

29. The Debt is allegedly owed by Plaintiff to Inphynet.

30. After Plaintiff's alleged default on the Debt, Inphynet hired Wakefield to attempt collection of the Debt from Plaintiff.

31. Thereafter, Wakefield alleged that Plaintiff incurred an obligation to pay the Debt.

32. A "communication" under the FCCPA and FDCPA means "the conveying of information regarding a debt directly **or indirectly to any person through any medium**." *See* 15 U.S.C. § 1692a(2) and Fla. Stat. § 559.55(2) (emphasis added).

33. Accordingly, because Inphynet hired Wakefield to attempt to collect the Debt from Plaintiff—and Wakefield was acting in its capacity as Inphynet's collection

agent when attempting to collect the Debt from Plaintiff—any "communication" from Wakefield to Plaintiff is also a "communication" to Plaintiff from Inphynet as it occurred indirectly through Wakefield.

34. On or around April 11, 2023, Wakefield communicated to Plaintiff (i.e., also an indirect communication from Inphynet) he allegedly owed a balance on the Debt of $2,629.05 after Plaintiff requested an itemized bill (but neither Defendant provided an itemized bill over the next *at least* 30 days).

35. On or around May 8, 2023, Wakefield communicated to Plaintiff (i.e., also an indirect communication from Inphynet) he allegedly owed a balance on the Debt of $2,629.05, the original amount of the debt was $2,305.05, and that an itemized bill was not yet available.

36. On or around May 16, 2023, Wakefield communicated to Plaintiff (i.e., also an indirect communication from Inphynet) he allegedly owed a balance on the Debt of $2,629.05, with an original balance of $2,305.00.

37. Also on May 16, 2023, Wakefield stated that an itemized bill had not yet been received from Inphynet.

38. Some forty-four (44) days after receiving a written request for validation of the Debt—which requested an itemized bill—on or around May 20, 2023, Wakefield replied directly via the wires, specifically via e-mail—and thus Inphynet replied indirectly through Wakefield—with Plaintiff's Patient Statement dated May 18, 2023, that reflected a "Total Now Due $0.00."

39. Said Patient Statement reflected two line-item entries with charges that

totaled $2,305.00 dated November 4, 2019, and a subsequent Description of "CLOSE & RETURN FACTOR/SERVICE W OFF" with a $2,305.00 notation of Payments/Credits dated March 19, 2021, bringing the "Total Now Due $0.00."

40. The "CLOSE & RETURN FACTOR/SERVICE W OFF" notation with the $2,305 Payment/Credit is confusing, and nowhere on Plaintiff's Patient Statement did it reflect any additional charges, such as interest, or a total balance due of $2,629.05.

41. See an excerpt from said collection attempt here:

| DATE/INVOICE # | DESCRIPTION | CHARGES | PAYMENTS/CREDITS |
|---|---|---|---|
| 11/04/2019 | EMERGENCY DEPT VISIT - 99285 | 2147.00 | |
| 11/04/2019 | ELECTROCARDIOGRAM REPORT - 93010 | 158.00 | |
| 02/05/2020 | MANAGED CARE PAYMENT | | 0.00 |
| 03/19/2021 | CLOSE & RETURN FACTOR/SERVICE W OFF | | 2305.00 |

42. Experian and TransUnion are each a consumer credit reporting agency as defined in 15 U.S.C. § 1681a(f) that regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit and consumer reports to third parties.

43. Plaintiff obtained a copy of his Experian and TransUnion credit reports dated May 8, 2023, which showed that Defendants were communicating to Plaintiff, Experian, TransUnion—and any other persons or entities accessing Plaintiff's Experian and TransUnion credit information about the debt—specifically amounts alleged to be owed of $2,596, $2,604, and $2,622 at various times.

44. As above, any communications to Experian, TransUnion, or others that conveyed information about the Debt from Wakefield qualify as "communications"

from Inphynet as indirectly through the medium of a collection agent sending mails, emails, or collection information to credit reporting agencies.

45. Nowhere in Plaintiff's May 8, 2023 Experian and TransUnion credit reports did Defendant ever report, demand, or attempt to collect the alleged final balances or totals of the Debt as $2,305.00 or $2,629.05.

46. More specifically, Defendants reported/demanded the balance owed on the alleged Debt to Experian and TransUnion from Plaintiff—via Wakefield directly and Inphynet indirectly—from a time better known to Defendants to at least mid-May 2023, for different increasing amounts and acknowledged the alleged account balance as the High Balance of $2,305.

| Report Date | Experian | TransUnion | Creditor Remarks |
|---|---|---|---|
| 1/24/2023 | $2,604 | $2,596 | Consumer disputed-meets FCRA requirements |
| 3/27/2023 | $2,622 | $2,622 | Consumer disputed-meets FCRA requirements |
| 5/08/2023 | $2,622 | $2,622 | Consumer disputed-meets FCRA requirements |

47. Defendants each knew or should have known the account details reported to Experian, TransUnion, and others, the details of which, including but limited to the alleged balance information as demands for payment, were incorrect and inconsistent.

48. Each reporting of the alleged Debt to Experian and TransUnion is a "communication" in an attempt to collect a debt as that term is defined by the FDCPA and FCCPA. *See Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs.,*

*LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); *See also Riveria v Bank One*, 145 F.R.D. 614 (D.P.R. 1993); *accord Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

49. Each reporting of the alleged Debt by Defendants to Experian and TransUnion—via Wakefield directly and Inphynet indirectly—is a communication in connection with collection of the Debt that conveyed information regarding the alleged Debt, including the name of the creditor alleged to be owed the debt being collected, and the amount alleged as owed.

50. The reporting of the alleged Debt by Wakefield directly and Inphynet indirectly to Experian and TransUnion—with the original creditor listed as Inphynet—sought to collect a purported consumer Debt incurred for personal, family or household purposes, and not for business purposes, specifically a (materially varying) balance allegedly owed for medical services provided to Plaintiff.

51. Plaintiff is not aware of any lawsuit that has been filed against him on behalf of Inphynet that demands damages in the form of prejudgment interest.

52. By attempting to collect prejudgment interest on the alleged Debt when there is no legal or contractual basis allowing for the addition of interest to the principal amount—and when no judgment has been entered against Plaintiff for the Debt alleged to be owed to Inphynet that allows the addition of prejudgment interest as damages—Defendants each falsely represented the alleged amount of the Debt owed by Plaintiff on the dates that Defendants reported the debts allegedly owed to Inphynet and communicated false alleged balances to Plaintiff and others. Again, any communications from Wakefield conveying information about the Debt qualify as indirect communications by Inphynet.

53. Fla. Stat. § 55.03 provides a statutory interest rate for *post-judgment* interest in Florida that is set yearly by the state comptroller. The statutory interest rate for *post-judgment* interest is the default rate applicable unless otherwise agreed by contract. This statute does not authorize the assessment of interest on a debt; it provides the maximum interest rate if interest is to be assessed by statute and contains the plain language that "nothing contained herein shall affect a rate of interest established by written contract or obligation."

54. An award of prejudgment interest is within the discretion of the trial court. The Florida Supreme Court has drawn a distinction between contract and tort cases; unequivocally allowing the award of prejudgment interest, when applicable, in the former while qualifying and limiting the availability of prejudgment interest in the latter. However, the court's discretion is appropriate, if and only if litigation is filed and the court enters judgment.

55. Florida's Patient's Bill of Rights provides that "[e]ach health care facility or provider shall", with regards to their financial information and disclosure responsibilities to the patients…. and "[a] patient has the right to receive a copy of an itemized statement or bill upon request." Fla. Stat. § 381.026(4)(c)(7).

56. Despite Defendants demanding an inflated alleged balance that included unlawful interest—Wakefield directly and Inphynet indirectly—at no time did Plaintiff receive a bill from Inphynet or Wakefield containing alleged interest charges.

57. At no time did Plaintiff enter into a contract with Inphynet—or anyone else—that contained a provision for prejudgment interest here.

58. At no time has any contractual provision existed between the Parties that allows for the interest Defendants demanded from Plaintiff via credit reporting and other demands for payment (again, Wakefield directly and Inphynet indirectly).

59. Defendants together—by way of their direct/indirect joint communications—demanded illegitimate prejudgment interest in all "communications" concerning the alleged Debt, including but not limited to, credit reporting to Experian and TransUnion and on collection phone calls and in emails.

60. Wakefield violated the FDCPA by reporting false, varying, and conflicting information to the credit bureaus via inflated balances on the Debt that included alleged/unlawful interest.

61. Wakefield violated the FDCPA by demanding inflated account balances on the Debt that included alleged/unlawful interest.

62. Defendants' collection attempts—direct and indirect—were meant to

coerce Plaintiff into paying the alleged Debt.

63. Wakefield failed to maintain (i.e., employ or implement) procedures to avoid such specific errors under the FDCPA and FCCPA during the collection of Plaintiff's alleged Debt.

64. Inphynet failed to maintain (i.e., employ or implement) procedures to avoid such specific errors under the FCCPA during the collection of Plaintiff's alleged Debt.

65. Wakefield's actions were designed to coerce Plaintiff into paying an amount for the alleged Debt that is not allowed by contract or by law, as acts of coercion and motivated by false profits.

66. Inphynet's actions were designed to coerce Plaintiff into paying an amount for the alleged Debt that is not allowed by contract or by law, as acts of coercion and motivated by false profits.

67. Wakefield attempted to collect the alleged Debt by communicating false and misleading representations or utilizing deceptive means.

68. Wakefield attempted to collect the alleged Debt by intentionally mischaracterizing and misrepresenting the character and legal status of the alleged Debt.

69. Defendants attempted to collect the alleged Debt by communicating false credit information as demands for payment of the alleged Debt (Wakefield directly, Inphynet indirectly).

70. Wakefield utilized unfair, unconscionable, and harassing means to

collect the alleged Deb from Plaintiff.

71. Wakefield knowingly attempted to collect illegitimate amounts from Plaintiff.

72. Inphynet knowingly attempted to collect illegitimate amounts from Plaintiff.

73. Defendants each asserted the existence of the alleged legal right to collect interest on the alleged Debt while knowing that such right did not exist (Wakefield directly, Inphynet indirectly).

74. Plaintiff commenced this action within two years of the unlawful actions and/or within two years of reasonably knowing of the unlawful actions of Defendants under the FCCPA.

75. Plaintiff commenced this action within one year of the unlawful actions and/or within one year of reasonably knowing of the unlawful actions of Wakefield under the FDCPA.

76. Wakefield's conduct violates 15 U.S.C. § et seq., including but not limited to subsections (e) and (f), because the representations made by Wakefield about the Debt were false, confusing, misleading, unfair, deceptive, not permitted, and failed to advise the consumer of his legal rights as required by law:

a. Wakefield violated 15 U.S.C. § 1692e by utilizing false, deceptive and misleading representations to collect the Debt;

b. Wakefield violated 15 U.S.C. § 1692e(2) by utilizing false, deceptive and misleading representations in regards to the character, amount or legal

status of the alleged Debt;

c. Wakefield violated 15 U.S.C. § 1692e(8) by engaging in conduct that communicated false credit information about the Debt;

d. Wakefield violated 15 U.S.C. § 1692e(10) by utilizing deceptive means to collect the Debt;

e. Wakefield violated 15 U.S.C. § 1692f by utilizing unfair and unconscionable means to collect the alleged Debt; and

f. Wakefield violated 15 U.S.C. § 1692f(1) by attempting to collect an amount on the Debt not authorized by any agreement and not permitted by law.

77. That as per 15 U.S.C. § 1692 et seq. and as a result of the above violations, Wakefield is liable to Plaintiff for actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

78. Plaintiff was damaged by Wakefield's conduct insomuch as Wakefield's attempts to collect a monetary amount not allowed by contract or law from Plaintiff, and Plaintiff experienced material emotional distress. The circumstances surrounding the violations make it obvious that a reasonable person would suffer emotional harm.

79. Defendants' conduct each violates Fla. Stat. Section 559.72, including but not limited to subsections (7) and (9) in the false, illegitimate, harassing, and knowingly false communications (i.e., mainly directly from Wakefield and indirectly

from Inphynet) made to attempt to collect the alleged Debt from Plaintiff.

80. That as per Fla. Stat. § 559.77 and because of the above violations, Defendants are liable to Plaintiff for actual damages pursuant to Fla. Stat. § 559.77, statutory damages in an amount up to $1,000.00 pursuant to Fla. Stat. § 559.77, punitive damages pursuant to Fla. Stat. § 559.77, and reasonable attorney's fees and costs pursuant to Fla. Stat. § 559.77.

81. Plaintiff was damaged by Defendants' conduct under the FCCPA insomuch as Defendants' attempts to collect a monetary amount not allowed by contract or law from Plaintiff, and Plaintiff experienced material emotional distress. The circumstances surrounding the violations make it obvious that a reasonable person would suffer emotional harm.

## CLASS ACTION ALLEGATIONS

82. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

83. The class consists of all individuals in Florida who, from the earliest allowable time until the date the class is certified, received a communication from Defendants—i.e.., directly from Wakefield and indirectly from Inphynet—asserting a debt that included illegitimate prejudgment interest in the total amount claimed to be owed.

84. The class members are so numerous that joinder is impracticable.

85. Based on the volume of debts collected by Wakefield and debts obtained from Inphynet, there are more than 100 class members.

86. There are questions of law and fact common to the class members and such common questions predominate over any questions relating to individual class members.

87. The predominating common questions are:

a. Whether a creditor has a right to prejudgment interest dating from the date an alleged debt is incurred;

b. Whether a creditor and/or debt collector can add to the amount claimed to be owed prejudgment interest dating from the date an alleged debt is incurred;

c. Whether prejudgment interest on a demand which includes prejudgment interest constitutes unlawful interest on interest;

d. Whether Wakefield's conduct violates the FDCPA;

e. Whether Defendants' conduct violates the FCCPA;

88. Plaintiff's claims are typical of the claims of the class members, as all are based on the same factual conduct and legal theories.

89. Plaintiff will fairly and adequately represent the class members, and Plaintiff has retained counsel experienced in class actions, FDCPA, and FCCPA litigation.

90. This cause is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable.

91. Individual litigation would not be preferable to a class action, because

individual litigation would increase the delay and expense to all parties.

92. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

93. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

## CAUSES OF ACTION

## COUNT I

### Violations of the Fair Debt Collection Practices Act
**(*as to Defendant Wakefield*)**

94. Plaintiff incorporates by reference paragraphs 1-13, 17-63, 65, 67-71, and 73-93 as though fully stated herein.

95. Defendant Wakefield violated the FDCPA.

96. The foregoing acts and omissions by Wakefield constitute numerous and multiple violations of the FDCPA including, but not limited to, each one of the above cited provisions of the FDCPA, with respect to Plaintiff.

97. By attempting to collect an amount not permitted by contract or law, Wakefield utilized false, deceptive and misleading representations. Consequently, Wakefield violated 15 U.S.C. § 1692e of the FDCPA.

98. By attempting to collect an amount not permitted by contract or law, Wakefield misrepresented the character, amount, or legal status of the alleged debt. Consequently, Wakefield violated 15 U.S.C. § 1692e(2).

99. By attempting to collect an amount not permitted by contract or law in its reporting to the credit bureaus, Wakefield violated 15 U.S.C. § 1692e(8) of the FDCPA.

100. By attempting to collect an amount not permitted by contract or law, Wakefield utilized deceptive means to collect a consumer debt. Consequently, Wakefield violated 15 U.S.C. § 1692e(10) of the FDCPA.

101. By attempting to collect prejudgment interest, Wakefield utilized unfair and unconscionable means to collect an alleged debt. Consequently, Wakefield violated 15 U.S.C. § 1692f of the FDCPA.

102. By attempting to collect prejudgment interest on a medical debt, Wakefield attempted to collect an amount not permitted by contract or by law. Consequently, Defendant violated 15 U.S.C. § 1692f(1).

103. As a result of this conduct of Wakefield, Plaintiff suffered actual damages in the form of attorney's fees and costs, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, and embarrassment, amongst other emotions.

104. Wakefield's violations of §§ 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692f(1) of the FDCPA render it liable for statutory damages, costs, and reasonable attorney's fees.

105. As a direct and proximate result of Wakefield's actions, Plaintiff and all others similarly situated sustained damages as defined by 15 U.S.C. § 1692k.

106. Plaintiff and all others similarly situated are entitled to recover statutory damages, actual damages, and attorney's fees/costs from Wakefield per the FDCPA.

## COUNT II

**Violations of the Florida Consumer Collection Practices Act**
**(*as to both Defendants, Wakefield and Inphynet*)**

107. Plaintiff incorporates by reference paragraphs 1 through 93 as though fully stated herein.

108. Defendants are each subject to, and each violated the provisions of, Florida Statutes, Section 559.72(9) by attempting to collect the alleged Debt with knowledge that the Alleged Debt is not legitimately owed by Plaintiff and by asserting the existence of a legal right that Defendants know does not exist (via direct communications from Wakefield and indirect communications from Inphynet, as alleged herein).

109. Specifically, Defendants each possessed actual knowledge that the account/Debt details they sought to collect from Plaintiff—and that they were reporting to Experian, TransUnion, and others—were incorrect and sought to recover illegal prejudgment interest.

110. Despite Defendants knowing that the alleged Debt owed by Plaintiff included illegal prejudgment interest, Defendants sent at least two (2) collection letters to Plaintiff asserting an illegal Debt, and further reported the improperly inflated Debt to credit reporting agencies and others (again, communications about the Debt conveyed by Wakefield qualify as indirect communications by Inphynet).

111. Such conduct likewise violates Fla. Stat. § 559.72(7)'s prohibition against willful communications which can reasonably be expected to abuse or harass the

debtor or any member of her or his family.

112. More specifically, illegally inflating alleged consumer debts to coerce consumers into paying higher amount than owed—particularly on medical debts which are most often unforeseen and devastating already—to inflate profits at the expense of consumer patients can reasonably be expected to abuse or harass consumers like Plaintiff and others similarly situated.

113. As a direct and proximate result of Defendants' actions, Plaintiff and all others similarly situated sustained damages as defined by Florida Statutes, Section 559.77.

114. Plaintiff and all others similarly situated are entitled to recover actual damages, costs and attorney's fees from both Defendants under the FCCPA.

## PRAYER FOR RELIEF

Plaintiff, Cesar Hernandez prays that this Court:

a. upon Motion, certify the class as defined herein under Fed. R. Civ. P. 23, appoint Plaintiff the class representative and the undersigned as class counsel;

b. enter Judgment against Defendants declaring that Defendants each violated the FCCPA;

c. enter Judgment against each Defendants for maximum statutory damages and/or actual damages allowable under the FCCPA;

d. enter Judgment against Wakefield declaring that Wakefield violated the FDCPA;

e. enter Judgment against Wakefield for maximum statutory damages and/or actual damages allowable under the FDCPA;

f. An award of attorneys' fees and costs; and

g. Any other such relief the Court may deem proper.

**JURY DEMAND**

Plaintiff, Cesar Hernandez, demands trial by jury.

Dated this 14th day of June 2024.

Respectfully submitted on behalf of,

**CESAR HERNANDEZ**

*/s/ Aaron M. Swift*
**Aaron M. Swift, Esq. (FBN 93088)**
Swift, Isringhaus, Dubbeld & McEleney, PLLC
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
(727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff and Class Members*

*~and~*

Joshua R. Jacobson (FBN: 1002264)
JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
Telephone: (407) 720-4057
joshua@jacobsonphillips.com
*Co-Counsel for Plaintiff and Class Members*

**CERTIFICATE OF SERVICE**

I, Aaron M. Swift, Esq., hereby certify that on this 14th day of June 2024, I electronically filed the foregoing via the Court's CM/ECF e-portal system, which will provide electronic notification and copies to all Parties via counsel of record.

/s/ *Aaron M. Swift*
Aaron M. Swift, Esq.
Attorney for Plaintiff and Class Members