**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CESAR HERNANDEZ,

Plaintiff,

v. Case No. 8:24-CV-00897-WFJ-NHA

WAKEFIELD & ASSOCIATES, LLC, a Foreign Limited Liability Company, and INPHYNET CONTRACTING SERVICES LLC, a domestic limited liability company,

Defendants.

______________________________

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Introduction**

This case concerns Plaintiff's allegations that Defendant Wakefield & Associates, LLC's ("Wakefield") practice of sending debt collection letters which included prejudgment interest on alleged debts purportedly owed to Defendant, Inphynet Contracting Services LLC. Plaintiff Cesar Hernandez contends Defendants' assessment of this interest lacked a contractual or legal basis and therefore violated the Fair Debt Collection Practices Act ("FDCPA") at 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10), 1692f, and 1692f(1), and Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.72(7), (9). Defendants deny any liability or that their practices violated the law.

Upon filing this action, Plaintiff promptly served discovery and the parties litigated for months' at arms' length before beginning settlement negotiations. After taking discovery to become sufficiently informed on the underpinnings of their claims and defenses, the parties selected a mediator and began pre-mediation settlement negotiations in approximately September 2024.

After months of negotiations and a mediation before Gregory P. Holder, the parties reached an agreement to settle this lawsuit on a class basis whereby Defendant Wakefield will refund all settlement class members who paid the challenged interest and create a non-reversionary settlement fund of $87,500 to be distributed equally among participating class members. Importantly, the settlement fund exceeds 1% of Defendant Wakefield's book-value net worth, and thus is more than Plaintiff could

have recovered for the class as against Wakefield in statutory damages had he prevailed at trial.

Defendants have confirmed they will forgive all interest included on Settlement Class Members' accounts. The total interest forgiven is approximately $1,013,000.00. Likewise, Defendant Wakefield agreed to cease the collection of prejudgment interest on consumer debts absent an express contractual or statutory basis. These commitments address the conduct underlying Plaintiff's and the class's claims.

Defendants have separately agreed to pay the costs of settlement administration and an individual damages award to Plaintiff, as allowed under the statute. Defendants agreed to pay also will pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees, costs, and expenses as awarded by the Court.

Plaintiff seeks certification of the settlement class and preliminary approval of the class settlement. Plaintiff and his counsel strongly believe this settlement is fair, reasonable, and adequate, and in the best interests of settlement class members. Plaintiff respectfully requests this Court enter the accompanying order granting preliminary approval of the settlement. Defendants do not oppose this relief.

## Summary of the Class Settlement

### I. The Settlement provides significant compensation to the Class and ensures that Defendants have ceased the conduct at issue.

The Agreement[1] defines a settlement class (the "Class") under Rule 23(b)(3) comprised of all persons (a) residing in Florida, (b) who were mailed at least one

[1] A true and correct copy of the Settlement Agreement is attached as Exhibit 1 hereto.

collection letter from Defendant Wakefield (c) regarding a purported medical debt owed to Inphynet (d) which sought an additional interest charge in excess of the principal balance, (e) from April 12, 2022, through September 19, 2024. Agreement, ¶ 1.4. The Agreement includes a subclass (the "Interest Sub-Class") defined as the individuals included in the Class who paid Defendant Wakefield an amount in excess of the principal balance of the purported debt (*i.e.*, the challenged interest). *Id.* ¶ 1.4.

Using its collection records, Defendant Wakefield identified 11,173 potential members of the Class, including Plaintiff, and 62 potential members of the Interest Sub-Class. *Id.* ¶ 1.6. Class members who submit a timely claim will receive a pro-rata share of the non-reversionary $87,500.00 settlement fund. Interest Sub-Class Members will automatically receive a refund of their interest payments as well as a pro-rata share of the settlement fund. *Id.* ¶ 2.3(A). Further, all Class Members will benefit from Defendant's automatic interest forgiveness in the total amount of approximately $1,013,000.00. *Id.* ¶ 2.3(E).

To the extent any settlement checks go uncashed after the settlement administrator takes all reasonable steps to forward checks, such funds will be redistributed to the Bay Area Legal Services, Inc.—the *cy pres* recipient selected by the parties. *Id.* ¶ 2.3(C).

Moreover, Defendants agreed to cease charging interest on alleged consumer debts absent express contractual or legal permission. *Id.* ¶ 2.3(D). Finally, separate and apart from the settlement fund, Defendant will pay $3,000 to Plaintiff as "additional damages" pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i) and Fla. Stat. § 559.77(2), plus the

costs of administration and an award of reasonable attorneys' fees and expenses to Plaintiff's counsel, subject to the Court's approval.[2] *Id.* ¶ 2.3(E).

### II. The Settlement provides for direct mail notice to all potential Settlement Class Members

The Agreement requires an ample notice program consisting of direct mail notice to each potential member of the Class, a simple claim process, creation of an informational settlement website, and automated phone system. To that end, the parties have selected Atticus to act as the settlement administrator. Atticus is an experienced settlement administrator previously approved for similar duties by this Court and courts throughout the country. *See, e.g.*, *Evans v. Intertape Polymer Corp.*, No. 8:23-cv-01042-KKM-AAS, 2024 U.S. Dist. LEXIS 212152, at *14 (M.D. Fla. Nov. 20, 2024); *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 U.S. Dist. LEXIS 112165, at *9 (S.D. Tex. June 25, 2024).

## Argument

### I. This Court should preliminarily certify the Class and Subclass.

#### A. The FDCPA and FCCPA are well-suited for class certification.

"Representative actions . . . appear to be fundamental to the statutory structure of the FDCPA. Lacking this procedural mechanism, meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to

---

[2] Defendants have agreed not to oppose up to $75,000 in attorneys' fees, though Plaintiff ultimately may seek a larger fee award based on the amount of work necessary for his counsel to see this matter through final approval. *Id.* ¶ 2.3(G).

prosecute an individual action." *Weiss v. Regal Collections*, 385 F. 3d 337, 345 (3d Cir. 2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 701 (S.D. Fla. 2004) (certifying class action under Rule 23(b)(3) for FDCPA and FCCPA, stating issues would be uneconomical to litigate individually). Moreover, class treatment of FDCPA and FCCPA claims are particularly appropriate because the FDCPA is a strict liability statute liberally construed in favor of the consumer. *E.g.*, *Hepson v. J.C. Christensen & Assocs., Inc.*, No. 07-1935, 2008 WL 4833097, at *4 (M.D. Fla. Nov. 5, 2008) ("the FDCPA must be liberally construed to support its remedial nature").

**B. Plaintiff satisfies the Rule 23(a) elements.**

To obtain certification of the proposed class, Plaintiff must satisfy each requirement of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Because Plaintiff seeks certification under Rule 23(b)(3), he must also demonstrate that common issues predominate and that class treatment is the superior method to resolve this dispute. *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 616 (S.D. Fla. 2009) (certifying FDCPA class). In the settlement context, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

**i. The Class and Subclass are so numerous that joinder of all members is impracticable.**

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity inquiry focuses on "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, during the class period, Defendant Wakefield sent debt collection letters including interest charges to 11,173 Class Members and collected interest payments from 62 members of the Interest Sub-Class. The membership of the Class and Interest Sub-Class are sufficiently numerous that joinder is impracticable. *See Cox*, 784 F.2d at 1553; *Bennett v. Hayes Robertson Grp., Inc.*, 880 F. Supp. 2d 1270, 1279-80 (S.D. Fla. 2012) (numerosity satisfied with estimated class size of at least 50 persons).

**ii. Plaintiff's claims present questions of law and fact common to the Class.**

Rule 23(a) also requires that there be at least one issue common to all Class members. *Drossin*, 225 F.R.D. at 615. Commonality is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004).

The claims asserted here originate from the same conduct, practice, and procedure on the part of Defendants—namely, sending Class Members debt collection letters that included interest charges. Thus, if brought and prosecuted individually, the

claims of each Class member would require proof of the same material and substantive facts. *See, e.g.*, *Collins*, 290 F.R.D. at 694 ("A determination of [the central] issue would apply equally and objectively to all of the potential plaintiffs in this action."). For these reasons, courts regularly certify class claims based on uniform debt collection conduct. *See, e.g.*, *GaalswijkKnetzke v. Receivables Mgmt. Servs. Corp.*, No. 08-493, 2008 WL 3850657 (M.D. Fla. Aug. 14, 2008); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692 (S.D. Fla. 2004). The same should hold for the Class here.

**iii. Plaintiff's claims are typical of those of the Class.**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996) ("The Eleventh Circuit has held that the requirement of typicality is satisfied where the interests of the named parties arise from the same course of conduct that gave rise to the claims of the class they seek to represent, and are based on the same legal or remedial theory . . . .").

Here, Plaintiff and the Class allegedly suffered by way of a common practice employed by Defendants: Plaintiff asserted that Wakefield attempted to collect a debt that included prejudgment interest without express contractual or legal authority to collect such interest. *See, e.g.*, *Collins*, 290 F.R.D. at 696 (since class members "were each subject to [Erin Capital]'s unlicensed and unlawful collection activity," typicality was satisfied). Thus, Plaintiff possesses the same interests and has suffered the same

injuries as each member of the Class, so they all assert identical claims and seek identical relief.

In short, Plaintiff is a member of the Class and his claims are typical of those of the other Class members. *See* ECF No. 28, ¶¶ 28–62, 88 (demonstrating Plaintiff's Class membership through Defendant's collection activities).[3] As a result, Plaintiff's claims are typical of those of the Class and Sub-Class he seeks to represent.

**iv. Plaintiff, and his counsel, will fairly and adequately protect the interests of the Class.**

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To adequately represent a class, a plaintiff must show he can act in a fiduciary role representing the interests of the class and has no interests antagonistic to the class's. *In re Ins. Mgmt. Sols. Grp., Inc.*, 206 F.R.D. 514, 516 (M.D. Fla. 2002). "While the burden in a class certification motion is on the Plaintiff, the adequacy of the putative representatives and of Plaintiff's counsel is presumed in the absence of specific proof to the contrary." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129–30 (5th Cir. 2005).

Here, Plaintiff's claims are aligned with those of the Class. He filed this case as a proposed class action to protect all those in Florida who were subjected to

---

[3] Plaintiff has standing to represent the Interest Sub-Class, which suffered actual damages by paying the interest challenged, even though Plaintiff did not pay the interest challenged herein. *See, e.g.*, *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675 (D. Nev. 2008) ("the Court concludes Plaintiff's lack of actual damages does not deprive him of standing to represent class members who have."); *Fabricant v. Sears Roebuck & Co.*, 202 F.R.D. 310, (S.D. Fla. 2001) (similar in TILA context).

Defendants' similar collection activities, immediately undertook discovery efforts to support the merits claim and prepare for class certification. Declaration of Joshua R. Jacobson ("Jacobson Decl."), attached as Exhibit 2, ¶¶ 10–14. He promptly negotiated a resolution that provides meaningful redress in the form of interest forgiveness, actual damages, and statutory damages—above and beyond the FDCPA's class statutory damages limit from Defendant Wakefield, *see infra*—to the Class. *Id.* ¶¶ 17–27. Plaintiff has no interests adverse to, or which directly and irrevocably conflict with, the interests of other members of the Class.

Moreover, Plaintiff has retained the services of counsel—Jacobson Phillips PLLC and Swift Law PLLC—who are experienced in complex class action litigation, will vigorously prosecute this action, and will protect all absent Class members. See Ex. 1, ¶¶ 7–10. As a result, Plaintiff satisfies Rule 23(a)(4).

**v. Plaintiff's counsel should be appointed class counsel.**

In appointing class counsel, Rule 23(g)(1)(A) requires the Court to consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit in representing the class. Counsel at Jacobson Phillips and Swift Law will continue to prosecute this action, as they have done to date, in an efficient and effective manner. In addition to satisfying the adequacy prong of Rule 23(a)(4), counsel also satisfies the considerations of Rule 23(g) and should be appointed class counsel. *See, e.g.*, Ex. 1, ¶ 8.

**C. Plaintiff satisfies the requirements of Rule 23(b)(3).**

In addition to each requirement of Rule 23(a) and Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). As relevant here, Rule 23(b)(3) requires that questions of law or fact common to the class predominate over questions affecting individual class members, and that, on balance, a class action be superior to other methods available for adjudication.

**i. Common questions of law and fact predominate over individualized inquiries.**

"Under Rule 23(b)(3) it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004). Indeed, "[p]redominance means that the issues in a class action must be capable of generalized proof such that the issues of the class predominate over those issues that are subject only to individualized proof." *Gaalswijk-Knetzke*, 2008 WL 3850657, at *4. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

In conducting a predominance inquiry, the court considers the relationships between common and individual questions. "An individual question requires evidence that is different from one class member to another, but a common question can be resolved by the same evidence for each class member or the issue can be proven by generalized, class-wide proof." *Stewart v. Fla. Cmty. Law Grp.*, No. 6:18-cv-2111-Orl-

CEM-DCI, 2019 U.S. Dist. LEXIS 153147, at *15 (M.D. Fla. Aug. 26, 2019). "In cases seeking relief for conduct involving form collection letters alleged to violate the FDCPA . . ., certification of a class is not unusual" because "the common issues raised by sending the same form collection letters [to class members] predominate over any individual issues." *Gaalswijk-Knetzke v. Receivables Mgmt. Servs. Corp.*, 2008 U.S. Dist. LEXIS 124382, at *11 (M.D. Fla. Aug. 14, 2008).

Predominance is satisfied here. The central legal issue before this Court is whether Defendants violated the FDCPA by sending debt collection letters that included charges for prejudgment interest on Inphynet debts. Numerous courts have found that common questions of law and fact predominate where class members' claims are based on standardized debt collection conduct such as that alleged here. *See, e.g.*, *Gaalswijk-Knetzke*, 2008 U.S. Dist. LEXIS 124382, at *11; *Stewart*, 2019 U.S. Dist. LEXIS 153147, at *15–*16 (finding the "central issue [of] whether Defendant violated the FDCPA by sending the notice relating to the collection of a debt to the settlement class members during the" predominated over individual issues).

**ii. A class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class's claims.**

When evaluating the superiority requirement of Rule 23(b)(3), the Court must consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the

particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

As the Eleventh Circuit explained, "[m]any courts comparing class actions to other adjudicative methods in FDCPA cases have concluded that class actions are a more efficient and consistent means of trying the legality of collection letters." *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 538 (11th Cir. 2017) (per curiam). This is in part because "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 294 (M.D. Ga. 2016). Moreover, "[c]lass members would have less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery should they be required to individually litigate their claims." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 641 (D. Or. 2015).

Because the claims in this case all arise from uniform collection conduct, a class action is the superior vehicle for determining the rights of absent class members. *Muzuco v. Re$ubmitt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013). For these reasons, a class action is the superior method to adjudicate this matter. *See Gaalswijk-Knetzke*, 2008 WL 3850657, at *5 ("Congress, however, did not contemplate that suits under the FDCPA would be adjudicated by means of large numbers of individuals filing separate suits. On the contrary, Congress provided for class actions as a means for recovery to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action.").

**II. This Court should preliminarily approve the parties' settlement as fair, reasonable, and adequate under Rule 23(e).**

In determining whether preliminary approval is warranted, the Court "is required to make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). If preliminarily approved, notice of the settlement may be given to Class members, and a hearing is scheduled to consider final approval of the settlement. The Court, however, is not required at this point to make a final determination as to the fairness of the settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIG. § 21.632 (4th ed. 2004).

Once the preliminary fairness evaluation has been made and notice has been issued, the Court then holds a final fairness hearing to finally determine whether the proposed settlement is fair, reasonable, and adequate. SEE MANUAL FOR COMPLEX LITIG. § 21.633-34; NEWBERG, § 11.25. That is, preliminary approval requires only that this Court evaluate whether the proposed settlement was negotiated at arm's-length and is within the range of possible litigation outcomes such that "probable

cause" exists to disseminate notice and begin the formal fairness process. *See* MANUAL FOR COMPLEX LITIG. § 21.632-33.

While a full fairness determination is not necessary at this early juncture, courts within the Eleventh Circuit apply the following factors for assessing the reasonableness and adequacy of a class action settlement at the final fairness hearing: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). The absence of fraud or collusion is likewise an important consideration in the approval process. *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 8:19-CV-00550-CEH-CPT, 2020 U.S. Dist. LEXIS 89175, at *10 (M.D. Fla. Apr. 23, 2020).

Plaintiff is confident that each relevant factor supports that the settlement is fair, adequate, and reasonable, and should receive approval. And in applying these factors, this Court should be guided foremost by the general principle that settlements of class actions are favored by the courts. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (per curiam) ("Our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").

**A. No Fraud or Collusion**

First, the settlement was not the product of collusion. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). The parties litigated this case at arms' length, engaged in formal and informal discovery efforts, negotiated for several months and engaged in a mediation before a well-respected mediator, reaching a settlement in principle at mediation, which was reduced to writing thereafter. Accordingly, there was no fraud or collusion involved in the settlement. *See Hanley*, 2020 U.S. Dist. LEXIS 89175, at *10.

**B. The complexity, expense, and duration of the litigation favors approval.**

Turning to the second factor, there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Ass'n for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). Indeed, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable[,] and settlement conserves judicial resources." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003).

These principles apply here. If the litigation had continued, Plaintiff would have had to obtain class certification over Defendant's objection, presumably defend a Rule 23(f) interlocutory appeal of class certification, and prevail at summary judgment, or trial, and on a likely merits appeal. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (Gonzalez, J.), aff'd, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the

fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"). Moreover, because damages under the FDCPA and FCCPA are not mandatory, there is no guarantee Plaintiff would have recovered any money for the Class, even had he prevailed. *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("Because damages are not mandatory, continued litigation presents a risk to Plaintiffs of expending time and money on this case with the possibility of no recovery at all for the Class. In light of the risks and costs of continued litigation, the immediate reward to Class Members is preferable.").

Thus, preliminary approval of the settlement is appropriate, in part, to avoid the uncertainties of class litigation, trial, and appeal. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("It would seem unwise, therefore, to risk the substantial benefits of the settlement to the uncertainty of trial.").

**C. The parties have sufficiently developed the factual record to enable Plaintiff and his counsel to make a reasoned settlement judgment.**

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that counsel had an adequate appreciation of the merits of the case before negotiating. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349 (S.D. Fla. 2011). Likewise, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

Here, from the outset of the case, the parties discussed the merits of the FDCPA and FCCPA claims at issue, both sides served and responded to formal discovery and made a document production, and Defendants provided Plaintiff with information concerning the size of the settlement class as well as Defendant Wakefield's net worth—the primary determinant of the class's total potential statutory damages award in this action. *See* 15 U.S.C. § 1692k(a)(2)(B).[4]

Moreover, Plaintiff's counsel is well-versed in FDCPA and FCCPA litigation, having litigated numerous such actions in Florida courts and beyond. *See* Declaration of Aaron Swift, attached as Exhibit 3 hereto, at ¶¶ 8–9, 12. The settlement was therefore consummated with due respect to the strengths and weaknesses of the case, and an understanding of the maximum potential Class recovery. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("That is, Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

**D. The probability of success on the merits, coupled with the range of possible recovery, favor preliminary approval.**

Next, this Court considers "the likelihood and extent of any recovery from the defendant[] absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 314. First, as to monetary benefits, in determining whether a settlement is fair in

[4] The parties focused on Defendant Wakefield's net worth because of likely difficulties prevailing on the merits of the claim against Inphynet. *See infra*.

light of the potential range of recovery, this Court is guided by the maxim that a proposed settlement may be only a fraction of the theoretical recovery, yet still fair and adequate in light of the attendant risks of litigation. *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1350.

No matter, the settlement fund here amounts to more than 1% of Defendant Wakefield's book-value net worth,[5] meaning the Class will receive benefits exceeding the best theoretical statutory damages recovery at trial for the Class given statutory limitations. *See* 15 U.S.C. § 1692k(a)(2)(B) (limiting FDCPA class statutory damages to the lesser of $500,000 or one percent of the debt collector's net worth); *see also Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("net worth" within meaning of § 1692k means "balance sheet or book value net worth" of assets minus liabilities). Additionally, Plaintiff recovered 100% of the actual damages sustained by the Interest

[5] Defendant Inphynet's net worth is not a particularly germane measuring stick by which to measure the Settlement because of the significant challenges to prevailing on the merits of such claims. Plaintiff's claims against Inphynet arise under Fla. Stat. §§ 559.72(7) and (9), and stem from debt collection letters the evidence shows were created and sent by *Wakefield*. In *Arianas v. LVNV Funding LLC*, 132 F. Supp. 3d 1322 (M.D. Fla. 2015), this Court granted summary judgment in the debt collector defendant's favor on a § 559.72(7) claim (which requires abusive or harassing conduct), finding that the receipt of six debt collection letters and four phone calls was not sufficiently harassing to state a claim. *Id.* at 1329–30. And in *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010), the Eleventh Circuit held that a § 559.72(9) claim (which prohibits a debt collector from attempting to collect an illegitimate debt) requires the defendant's "actual knowledge that the threatened means of enforcing the debt was unavailable." *Id.* at 1192 n.12.

Thus, Plaintiff would have faced significant difficulty prevailing on these claims *as against Inphynet*. While such recovery may have been unlikely, Plaintiff was nevertheless successful in negotiating a statutory damages fund that exceeded 1% of Defendant Wakefield's net worth, thus contemplating an Inphynet-related recovery.

Sub-Class and a substantial interest waiver benefit whereby Defendant Wakefield waived more than $1,000,000.00 in interest applied to Class Members' accounts.

Further, there was no guarantee of a full, or even significant, statutory damages recovery at trial because the FDCPA's and FCCPA's damages provisions are permissive; the statutes provide for awards *up to* certain amounts, after balancing factors like the nature of Defendant's noncompliance, the number of persons adversely affected, and the extent to which Defendant's noncompliance was intentional. See 15 U.S.C. § 1692k(b)(2); Fla. Stat. § 559.77(2).

So, even had Plaintiff and the Class proceeded to trial and prevailed on the merits, the jury still could have awarded less statutory damages, or potentially none at all. Indeed, such risk of a minimal damages award in an FDCPA class action is not merely hypothetical. E*.g., Dickens v. GC Servs. Ltd. P'ship*, 220 F. Supp. 3d 1312, 1324 (M.D. Fla. 2016) ("Having considered these factors and the parties' briefs, the Court finds that the statutory award in this case should be nominal, whether that award applies to Dickens alone or a class of plaintiffs."), *vacated and remanded*, 706 F. App'x 529 (11th Cir. 2017); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, No. 06-1397, 2011 WL 1434679, at *11 (N.D. Ohio 2011) (analyzing the factors set forth in 15 U.S.C. § 1692k and awarding no "additional damages" to members of the class).

Second, as to the merits of the Class's claims, given the relatively early stage of this litigation, success was not assured. Without settlement, Defendants would certainly have objected to the certification of any litigation class (as opposed to the settlement class now before the Court). And on the merits, Defendants were likely to

argue that the debt collection letters at issue did not violate the FDCPA or FCCPA, and that even if the Court were to find violations, such violations were unintentional and the result of bona fide errors for which Defendants would be entitled to an affirmative defense under the law. See 15 U.S.C. § 1692k(c). Defendants' success on these defenses could have foreclosed any recovery.

Given the foregoing, the immediate relief provided by the settlement is significant, as individual recoveries of approximately $7.83 per Class member ($98.67 per Class Member if the interest waiver benefit is included) compare favorably with, or even surpass, others approved in recent FDCPA class settlements. *See, e.g.*, *Brockman v. Mankin L. Grp., P.A.*, No. 20-893, 2021 WL 911265, at *2 (M.D. Fla. Mar. 10, 2021) (approximately $60 per claimant); *Sullivan v. Marinosci Law Grp., P.C.*, P.A., No. 18-81368, 2019 WL 6709575, at *2 (S.D. Fla. Nov. 22, 2019) ($27.51 per class member); *Dickens v. GC Servs. Ltd. P'ship*, No. 16-803, 2019 WL 2280456, at *2 (M.D. Fla. May 28, 2019) ($10 per person); *Hall v. Frederick J. Hanna & Assocs., P.C.*, 2016 WL 2865081, at *3 (N.D. Ga. May 10, 2016) ($10 per class member); *Green v. Dressman Benzinger Lavelle, PSC*, No. 14-142, 2015 WL 223764, at *3 (S.D. Ohio Jan. 16, 2015) ($31 per person); *Little-King v. Hayt Hayt & Landau*, No. 11-5621, 2013 WL 4874349, at *14 (D.N.J. Sept. 10, 2013) ($7.87 per class member); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. 2006) ($7.32 per person).

What's more, Plaintiff obtained a statutory individual damages award of $3,000, see 15 U.S.C. § 1692k(a)(2)(A), Fla. Stat. § 559.77(2), and secured Wakefield's confirmation that it will no longer charge prejudgment interest on debt placed for

collection (absent express contractual or legal permission)—the latter being prospective relief not necessarily available at trial. *See, e.g.*, *Berg v. Merchs. Ass'n Collection Div., Inc.*, 586 F. Supp. 2d 1336, 1346 (S.D. Fla. 2008) ("Count III of the Plaintiff's Complaint seeks injunctive relief under both the FCCPA and the FDCPA. [T]he FDCPA does not authorize injunctive relief to private litigants."). This change in business practices will benefit not only the Class, but all consumers who may become the target of Defendants' collection efforts in the future.

In sum, considering the benefits obtained here, in comparison to those likely at trial and those obtained in other similar actions, plus the risks in moving forward, this factor supports preliminary approval of the settlement.

**E. The opinions of Plaintiff and his counsel strongly favor preliminary approval.**

Additionally, both Plaintiff and his counsel firmly believe that the settlement is fair, reasonable, and adequate, and in the best interests of all Class members. A strong initial presumption of fairness attaches to the proposed settlement because it was reached by well-qualified and experienced counsel engaged in arm's-length negotiations. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel."); *accord* Ex. 1 at ¶¶ 17–29 (demonstrating proposed class counsel's extensive experience). And when compared with other similar settlements, *see supra*, the parties' negotiated pact provides monetary and prospective relief that well matches—and even exceeds—the relief obtained by

other plaintiffs around the state, and around the country. Plaintiff's and his counsel's strong support for this settlement militates toward its approval.

**F. The settlement treats members of the Class equitably.**

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. The Advisory Committee's Note advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018).

Here, each Class member has the same claim, and thus, the settlement provides that each participating Class member will receive an equal portion of the settlement fund. This factor therefore supports preliminary approval. *See Hale v. State Farm Mut. Auto. Ins. Co.*, No. 12-0660DRH, 2018 WL 6606079, at *5 (S.D. Ill. Dec. 16, 2018) (finding settlement fair and equitable where class had identical damages and settlement "entitle[d] each class member to an equal, pro-rata share of the Settlement fund.").

That the Interest Sub-Class will recover their actual damages as well (*i.e.*, the interest they paid on their Inphynet accounts) is equitable and appropriate considering the fact that the general Class did not incur such damages. *See Callendar v. Coastal Int'l Sec., Inc.*, No. 5:10-CV-220, 2012 U.S. Dist. LEXIS 32692, at *12 (W.D. Ky. Mar. 12, 2012) ("The Supreme Court has counseled that subclasses may be necessary when categories of claims have different settlement values.").

**III. This Court should approve the proposed notice to Class members.**

Under Rule 23(e), this Court also must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." See Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties agreed to a notice program to be administered by a third-party settlement administrator that will use all reasonable efforts to provide direct mail notice to each member of the Class. Agreement, ¶ 2.1. This notice plan complies with Rule 23 and due process because, among other things, it informs class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Class and claims asserted; (3) the binding effect of a judgment if the Class member does not request exclusion; (4) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (5) information regarding Plaintiff's request for statutory damages and reimbursement of her attorneys' fees and expenses; and (6) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B); MANUAL FOR COMPLEX LITIG. § 21.312.

In short, this notice plan ensures that class members' due process rights are amply protected and, as a result, should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the

method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice.").

**IV. The Court should schedule a final fairness hearing.**

Finally, the last step in the settlement approval process is a final fairness hearing for this Court to hear all evidence and argument necessary to make its final settlement evaluation. See Fed. R. Civ. P. 23(e)(2). Proponents of the settlement may offer argument in support of final approval, and class members who have properly objected to the settlement may be heard at this hearing as well. The Court then will determine after the final fairness hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).

Plaintiff respectfully requests that this Court set a date for a final fairness hearing at the Court's convenience, approximately 110 days after the Court's preliminary approval of the settlement.

**Conclusion**

Plaintiff respectfully requests that this Court enter the accompanying order certifying the proposed settlement class (attached hereto Exhibit 4), appointing Plaintiff its class representative and her counsel class counsel, granting preliminary approval to the parties' settlement, and directing notice as described above. Defendants do not oppose the relief requested herein.

Dated: February 4, 2025

*/s/ Joshua R. Jacobson*
Joshua R. Jacobson (FBN: 1002264)

JACOBSON PHILLIPS PLLC
478 E. Altamonte Dr., Ste. 108-570
Altamonte Springs, FL 32701
Telephone: (407) 720-4057
joshua@jacobsonphillips.com
*Co-Counsel for Plaintiff*

*~and~*

Aaron M. Swift (FBN 93088)
Jordan T. Isringhaus (FBN 91487)
Sean E. McEleney (FBN 125561)
Swift, Isringhaus, Dubbeld & McEleney, PLLC
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
(727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on February 4, 2025, via the Clerk of Court's CM/ECF system, which will provide electronic service to all counsel of record.

*/s/ Joshua R. Jacobson*
Joshua R. Jacobson