**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CESAR HERNANDEZ,

Plaintiff,

v.

Case No. 8:24-CV-00897-WFJ-NHA

WAKEFIELD & ASSOCIATES, LLC, a Foreign Limited Liability Company, and INPHYNET CONTRACTING SERVICES LLC, a domestic limited liability company,

Defendants.

__________________________________

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## Introduction

With universal support from the parties and from class members, Cesar Hernandez ("Plaintiff") presents for final approval under Rule 23(e) a class settlement providing class members meaningful monetary relief while ensuring Defendants cease the very collection conduct giving rise to Plaintiff's and the class's claims.

Under the agreed and preliminarily approved Settlement, Defendant Wakefield agreed to refund all settlement class members who paid the challenged interest and create a non-reversionary settlement fund of $87,500 to be distributed equally among participating class members. Importantly, the settlement fund alone (*i.e.*, not including the refunds or interest forgiveness, *infra*) exceeds 1% of Defendant Wakefield's book-value net worth, and thus is more than Plaintiff could have recovered for the class as against Wakefield in statutory damages had he prevailed at trial.

As part of the Settlement, Defendants further agreed to forgive all interest included on Settlement Class Members' accounts. The total interest forgiven is approximately $1,013,000.00. Likewise, Defendant Wakefield agreed to cease the collection of prejudgment interest on consumer debts absent an express contractual or statutory basis. These commitments address the conduct underlying Plaintiff's and the class's claims.

Defendants separately agreed to pay costs of settlement administration and an individual damages award to Plaintiff, as allowed under the statutes sued under. Finally, Defendants also will pay—separate from the above amounts—Plaintiff's counsel's reasonable attorneys' fees, costs, and expenses as awarded by the Court.

Plaintiff secured these excellent recoveries without class members having to wait months, or even years, longer while the parties completed discovery, undertook dispositive motion practice, litigated class certification and a potential Rule 23(f) appeal, and then potentially trial and subsequent appeals. Instead, relief will be immediate.

Pursuant to this Court's preliminary approval order, ECF No. 47, the class administrator distributed notice of the settlement—via direct mail—to each potential class member. With the deadline to do so having passed on April 8, 2025, no class member objected to any aspect of the settlement, nor did anyone seek to be excluded. This broad support and lack of opposition underscore the success Plaintiff achieved for all class members.

Plaintiff and his counsel strongly believe that the parties' settlement is fair, reasonable, and adequate, and in the best interests of the class. As more fully set forth below, Plaintiff respectfully requests that this Court enter the accompanying order granting final approval to the settlement.

Neither Defendant nor any class members oppose this relief.

**Class Settlement Summary**

This Court on February 7, 2025, certified a Rule 23(b)(3) settlement class composed of all Florida residents who were mailed a debt collection letter from Wakefield regarding a past-due medical debt to Inphynet and which sought an additional interest charge in excess of the principal debt amount during the relevant period. *Hernandez v. Wakefield & Assocs., LLC*, No. 8:24-CV-00897-WFJ-NHA, ECF

No. 47, at 2 (M.D. Fla. Feb. 7, 2025). The Court also certified a subclass comprising all individuals who paid a portion of the challenged interest. *Id.*

With the help of the Court-appointed settlement administrator, Atticus, the parties mailed class settlement notices, directly, to 10,775 Settlement Class Members (including 57 Interest Sub-Class Members) to whom Defendant Wakefield had sent collection letters that included interest. *See* Ex. A, Declaration of Bryn Bridley Re: Dissemination of Notice and Class Action Settlement Administration ("Bridley Dec."), ¶ 4. The parties directed notice to Settlement Class Members' last known mailing addresses according to Defendant's records, and prior to mailing the notices, Atticus also updated addresses through the U.S. Postal Service's Change of Address database. Ex. A at ¶ 5. As of this date, direct Notice has been successfully delivered to 97.18% of the Class. *Id.* ¶¶ 5–8.

In addition, Atticus posted information about the Settlement on a dedicated website and established a dedicated toll-free telephone number and email address, as additional avenues for Class Members to learn and ask questions about the Settlement. *Id.* ¶¶ 9–12.

Each Settlement Class Member who submits a timely claim, and each member of the Interest Sub-Class—466 participating members in total—will receive a pro-rata payment from the $87,500 settlement fund. *Id.* ¶ 16. In addition, each member of the Interest Sub-Class will automatically receive a refund of any challenged interest they paid. *Id.* ¶ 19. Finally, each Settlement Class Member will automatically benefit from Defendants' agreement to forgive any challenged interest, a benefit valued at

$1,013,000.00. In the event any settlement checks go uncashed after Atticus takes all reasonable steps to forward checks to any forwarding addresses, the remaining settlement monies will be distributed to Bay Area Legal Services, Inc.—the *cy pres* recipient selected by the parties. Moreover, Defendants have agreed to cease charging interest on alleged consumer debts absent express contractual or legal permission.

Per this Court's preliminary approval order, the deadline for class members to submit exclusion requests or object to the settlement passed on April 8, 2025. *See* Doc. 47, at 6–7. Following a successful class notice campaign reaching more than 97% of the Class, the Class's reaction to the settlement has been universally positive. Not one person objected to the settlement, and no one sought exclusion. Ex. A at ¶¶ 17–18. Thus, support for the parties' settlement is unanimous.

## Argument

### I. The Court should confirm its certification of the settlement class.

In connection with preliminary approval, this Court certified the settlement class and subclass identified above. Doc. 47, at 3–4. Nothing has changed in the interim, and so there is no need to revisit certification; the Court should confirm certification of the Settlement Class and Interest Sub-Class.

### II. The Court should finally approve the class settlement as fair, reasonable, and adequate under Rule 23(e).

Consistent with the Eleventh Circuit's strong preference for class settlements, a court should approve a class action settlement under Rule 23 if it is "fair, adequate,

reasonable, and not the product of collusion." *Leverso v. SouthTrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994). Rule 23(e)(2) specifies that settlements may be approved if the settlement class was adequately represented, the settlement was negotiated at arm's length, and the relief provided is adequate, accounting for factors such as the risk of litigation, method for distributing relief to class members, and agreements concerning attorneys' fees. Fed. R. Civ. P. 23(e)(2). In the Eleventh Circuit, the Rule 23(e) analysis considers *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984), which outlined factors relevant to determining whether a settlement is fair and reasonable:

> Specifically, the court made findings of fact that there was no fraud or collusion in arriving at the settlement and that the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Id.* at 986. A court's determination concerning whether to approve a settlement as fair, adequate, and reasonable is discretionary. *Id.* at 987.

Plaintiff addressed all but one of these factors in his Motion for Preliminary Approval. (Doc. 46, at 14–23). Since nothing has materially changed to alter the analysis of the above-described factors since approval was granted, Plaintiff incorporates by reference those arguments herein. *Id.*

The only remaining factor to address is the "substance and amount of opposition to the settlement." *Bennett*, 737 F.2d at 986. "The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement,

is a proper consideration for the trial court." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). Following a successful direct mail notice campaign, no opposition exists here—not one person objected to the settlement or requested to be excluded from this settlement. The class's universally favorable reaction to the settlement supports its approval. *See Lee v. Ocwen Loan Servicing, LLC*, No. 14-60649, 2015 WL 5449813, at *5 (S.D. Fla. Sept. 14, 2015) (Goodman, M.J.) ("Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable."); *Hall v. Bank of Am., N.A.*, No. 12-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (Moreno, J.) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Burrows v. Purchasing Power, LLC*, No. 12-22800, 2013 WL 10167232, at *7 (S.D. Fla. Oct. 7, 2013) ("As to the fifth *Bennett* factor, the Court finds that the substance and amount of opposition to the settlement weighs in favor of the settlement's approval. No members of the Settlement Class oppose the settlement, nor have any governmental agencies filed opposition.").

In sum, the class's unanimous support for the settlement has now reinforced the initial presumption of fairness such that class members' positive reactions, and the absence of any opposition, strongly favor final settlement approval.

**III. Distribution of notice of the Settlement satisfied due process requirements and Rule 23.**

Last, Rule 23 requires "that class members be given information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). "Courts recognize that notice reaching between 70% and 95% of a class is reasonable, and the median is 87% reach on approved notice plans." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *26 (S.D. Fla. July 8, 2023).

Here, Atticus used all reasonable efforts to provide direct mail notice to each member of the class. See Ex. A at ¶¶ 4–8. In addition, Atticus posted information about the Settlement on a dedicated website where Class Members could learn more and established a dedicated toll-free telephone number and email address for fielding inquiries. *Id.* ¶¶ 9–12. The Court-approved notice apprised class members of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for objecting or submitting a request to be excluded from the settlement; (5) information regarding class counsel's request for an

award of attorneys' fees, costs and expenses; and (6) how to make inquiries and obtain additional information. *See* Doc. 46-2, at Exs. B–C thereto; Doc. 47, at 5.

Crucially, the reach of Class Notice exceeded the high end of the range courts have found to be reasonable, with class notice reaching an impressive 97.18% of the class. *See Desue*, 2023 U.S. Dist. LEXIS 117355, at *26; Ex. A, ¶ 9.

Each Class Member also received meaningful relief—the interest forgiveness was applied across the board and each Interest Sub-Class Member who paid the challenged interest was automatically refunded the interest paid. And, pursuant to the preliminarily approved Settlement, the General Class Fund will be distributed to each of the participating 466 Class Members. Ex. A, ¶ 16; *see also Desue*, 2023 U.S. Dist. LEXIS 117355, at *27–*28 (finding claims rate of 0.66% fell "within the acceptable range for final approval").

In short, this notice plan ensured that class members' due process rights were amply protected, and the settlement should be approved. *See* Fed. R. Civ. P. 23(c)(2)(B); *Faught*, 668 F.3d at 1239–40.

**<u>Conclusion</u>**

The parties worked efficiently and effectively to find a favorable resolution for the Class and Sub-Class. The negotiated settlement will provide class members meaningful relief, in the form of interest forgiveness, interest refunds, and *pro rata* claims payments from a non-reversionary settlement fund. Plaintiff also secured Defendants' commitment to no longer engage in the very collection conduct here in dispute. Class members universally support the settlement—no one objected or asked

to be excluded. This Court should enter the accompanying proposed order granting final settlement approval attached hereto as Exhibit B.

Worth noting again, neither Defendant nor any class members oppose this relief.

Dated: May 2, 2025

*/s/ Joshua R. Jacobson*
Joshua R. Jacobson (FBN: 1002264)
JACOBSON PHILLIPS PLLC
2277 Lee Rd., Ste. B
Winter Park, FL 32789
Telephone: (321) 447-6461
joshua@jacobsonphillips.com
*Co-Counsel for Plaintiff*

*~and~*

Aaron M. Swift (FBN 93088)
Jordan T. Isringhaus (FBN 91487)
Sean E. McEleney (FBN 125561)
Swift, Isringhaus, Dubbeld & McEleney, PLLC
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
(727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Co-Counsel for Plaintiff*